IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON TATE, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 13-131 |
| CITY OF PHILADELPHIA, SERGEANT PATRICK LOVE, POLICE OFFICER EDGAR VAZQUEZ, and JOHN DOES 1-5, | : |
| Defendants. | : |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                           **AUGUST 28, 2014**

Presently pending before the Court is a Motion in Limine to Permit the Use of Prior Criminal Convictions as Impeachment of Randall Russell filed by Defendants, the City of Philadelphia ("City"), Sergeant Patrick Love ("Love"), and Police Officer Edgar Vazquez ("Vazquez") (collectively, "Defendants"), and Plaintiff Jason Tate's ("Tate") Response to Defendants' Motion in Limine. For the reasons set forth below, Defendants' Motion is granted.

I.   **BACKGROUND**

Tate asserts claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights during the course of his arrest on June 8, 2011.[1] Compl. ¶¶ 1, 29. Tate claims that the arresting officers, Vazquez and Love, used excessive force while taking him into custody. Id. Tate's Complaint includes claims for assault and battery under state law. Id. ¶¶ 30-31. Defendants contend that Vazquez and Love acted appropriately at all times. (Joint

---

[1] Defendants state that "[Tate] concedes he had smoked a small amount of PCP prior to his encounter with police." (Joint Pretrial Order at 2.)

Pretrial Order at 1.)

Tate states that his friend, Randall Russell ("Russell"), is the sole independent witness to the occurrence. (Pl.s' Response Opp'n Defs.' Mot. in Limine at 1.) Defendants agree that Tate and Russell were walking together when Vazquez first approached them to conduct a police investigation. (Defs.' Mem. Law Support Mot. in Limine at 1.) However, Defendants state that "Mr. Russell's testimony regarding what subsequently occurred widely diverges from the testimony of the Defendant police officers." (Id.) "At his deposition, Officer Vazquez testified that Mr. Russell fled the scene once Plaintiff began resisting arrest." (Id.; Ex. A (Vazquez Dep. Trans.) at 14:3-15:15.) Defendants go on to assert that Love will testify at trial that Russell fled the scene by the time that he arrived and saw Tate struggling with Vazquez. (Id.) Russell, however, claims that he remained at the scene until Love arrived and tased Tate. (Id. at 2; Ex. B. (Russell Dep. Trans.) at 24:17-25:21.) Additionally, the parties' versions of events widely diverge in that "Mr. Russell . . . has testified that Officer Vazquez did deploy his taser . . . and Sergeant Love tased Plaintiff after he was secured and in handcuffs." (Id.; Ex. B at 23:17-20; 28:6-16.) Defendants assert that, at trial, Office Vazquez will testify that he did not use his taser on Tate, and Sergeant Love has previously testified that he only used his taser because Tate tried to attack the police officers. (Id.)

Clearly, there is a factual disagreement between the parties. Tate argues that he was injured as a result of the excessive force used by Vazquez and Love. Defendants contend that any injuries to Tate were the consequence of his resisting arrest and struggling with the police when they were attempting to lawfully apprehend him. The trial for this action is scheduled for September 22, 2014.

**II.	DISCUSSION**

Defendants' Motion in Limine seeks an order permitting them to use four prior convictions of Russell to impeach his credibility if he takes the stand during trial. (See Defs.' Mem. Law Support Mot. in Limine at 5.) The prior convictions at issue are the following:

- June 2, 2006 - Russell was convicted of possession with intent to deliver under 35 P.S. § 780-113 (a). (Defs.' Mot. in Limine; Ex. D (Certified Copy of 2006 Conviction).) Russell could have received a maximum sentence of five years because he was convicted of dealing oxycontin, a Schedule II narcotic. See 35 P.S. § 780-113(f)(2); Defs.' Mot. In Limine; Ex. D at 5, 11.

- October 19, 2009 - Russell received his third DUI conviction under 75 P.S. § 3802(d)(2). (Defs.' Mot. in Limine; Ex. E (Certified Copy of 2009 Conviction).) Since the conviction was Russell's third DUI conviction, he faced a minimum sentence of one year of imprisonment, see 75 P.S. § 3804(c)(3)(I), and was initially sentenced to 1-2 years of confinement. (Defs.' Mot. in Limine; Ex. E at 4.) Russell managed to get resentenced to a 45 day term. (Id. n.2; Ex. E at 3.)

- July 20, 2010 - Russell was convicted of knowingly possessing an illegal narcotic under 35 P.S. § 780-113(a)(16). (Defs.' Mot. in Limine; Ex. F. (Certified Copy of 2010 Conviction).) Due to Russell's prior conviction under § 780-113, he could have received a sentence of three years in prison for this crime. See 35 P.S. § 780-113(b).

- October 22, 2013 - Russell was convicted of knowingly possessing an illegal narcotic under 35 P.S. § 780-113(a)(16). (Id.; Ex. G (Certified Copy of 2013 Conviction).) This crime could have carried a sentence of three years' imprisonment. See 35 P.S. § 780-113(b).

**A.	*Legal Standard***

Except as otherwise provided, the Federal Rules of Evidence state that relevant evidence is admissible and "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. However, Federal Rule of Evidence Rule 608(b) generally prevents the admissibility of specific instances of conduct for the purpose of attacking or supporting a witness's character. Fed. R. Evid. 608(b). Several exceptions to this general rule are set forth in Federal Rule of Evidence Rule 609. Fed.

3

R. Evid. 609.  Specifically, Rule 609(a) permits evidence of prior criminal convictions to be admitted for impeachment purposes.[2]  Fed. R. Evid. 609(a)(1).  Under Rule 609(a), evidence of a prior criminal conviction may be admitted "to attack[ ] a witness's character for truthfulness" in several circumstances.  Id.  If the witness was convicted of a crime that "was punishable by death or by imprisonment for more than one year," then the conviction "must be admitted, subject to Rule 403, in a civil case."  Fed. R. Evid. 609(a)(1)(A) (citing Fed. R. Evid. 403).

Pursuant to Federal Rule of Evidence 403, a court can exclude relevant evidence "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; see also Sharif v. Picone, 740 F.3d 263, 272 (3d Cir. 2014) ("Since Rule 609 is subject to Rule 403, courts must consider whether the probative value of a prior conviction is substantially outweighed by the prejudicial effect of admitting the conviction.").  When striking a Rule 403 balance with respect to proffered evidence, "a trial court is afforded substantial discretion."  McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (citation omitted).  "[A] trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is arbitrary and irrational."  Id. (citation omitted).

In admitting a conviction, the United States Court of Appeals for the Third Circuit in United States v. Greenidge, 495 F.3d 85 (3d Cir. 2007), set forth that a district court must weigh the conviction's probative value against its prejudicial effect.  Id. at 97; see also Sharif, 740 F.3d at 272 (stating that the four Greenidge factors should be weighed against the potential for

---

[2] Additionally, Rule 609 provides for different admissibility standards in the event that the prior conviction is over ten years old, has been pardoned or annulled, or was a juvenile adjudication.  Fed. R. Evid. 609(b)-(d).  Those circumstances do not apply here.

4

prejudice in admitting a conviction). In so doing, the Greenidge Court held that a district court should consider the following four factors: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness's testimony to the case; and (4) the importance of the credibility of the witness. Id.; see also Sharif, 740 F.3d at 272. Applying the Greenidge factors, I conclude that Russell's prior criminal convictions should be admitted under Rule 609(a)(1)(A) .

### B.  *Analysis*

Regarding the nature of the crimes involved, two of the convictions were for knowingly possessing an illegal narcotic, one was for possession with intent to deliver a Schedule II narcotic, and one was for a third DUI. See *supra* p. 3. "The first Greenidge factor focuses primarily on whether the witness's prior convictions are for the same or substantially the same conduct at issue in the case being tried." Diaz v. Alberts, No. 10-5939, 2013 WL 2322485, at *8 (E.D. Pa. May 28, 2013) (citations omitted). "When prior convictions are based on similar conduct, they generally should be 'admitted sparingly' because 'there is an inevitable pressure on lay jurors to believe that if he did it before he probably did it this time.'" Id. (citing United States v. Cherry, No. 10–091, 2010 WL 3156529, at *6 (E.D. Pa. Aug.10, 2010); Gordon v. United States*,* 383 F.2d 936, 940 (D.C. Cir. 1967) (stating that "convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not")). Notably, this case does not concern crimes by Russell. Rather, it pertains to alleged violations by Vazquez and Love. Additionally, Russell's convictions involve drugs and a third DUI, and do not involve violent crimes. They are not the types of convictions that are known to inflame jurors. Thus, the risk of prejudice is slightly diminished.

Russell argues that his four prior convictions do not involve dishonesty; therefore, they and are not probative of his character for truthfulness. (Pl.'s Response Defs.' Mot. in Limine at 3.) "Rule 609 is premised on 'the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" United States v. Murphy, 172 F. App'x 461, 462 (3d Cir. 2006 ) (quoting Walden v. Georgia Pac. Corp., 126 F.3d 506, 523 (3d Cir. 1997)). "Rule 609 evidence is admitted in order to inform the jury about the character of the witnesses whose testimony the jury is asked to believe." Id. (citation omitted). Prior drug convictions have probative value for impeachment purposes under Rule 609(a)(1). See id. at 463 (citations omitted). In light of the above, we find that the first Greenidge factor weighs in favor of admission.

The second Greenidge factor regards when the convictions occurred. This factor is concerned with the remoteness of the convictions. See Greenidge, 495 F.3d at 97. "When a prior conviction is not 'remote in time' from the time of trial, it is more relevant to the case at hand than when it is an older conviction." Sharif, 740 F.3d at 273. Russell's two convictions for knowingly possessing a narcotic occurred in 2010 and 2013; therefore, their recency weighs in favor of their admission. See Diaz, 2013 WL 2322485, at *8 ("All of these convictions occurred within approximately the last four years, and that recency thus weighs in favor of admission.") Likewise, Russell's conviction for his third DUI occurred fairly recently in 2009, which weighs in favor of admission. See id. Russell's conviction for intent to distribute narcotics was eight years ago in 2006; therefore, its probative value is diminished. See Sharif, 740 F.3d at 273 (comparing United States v. Causey, 9 F.3d 1341, 1344 (7th Cir. 1993) (conviction within the last six months was highly probative) with United States v. Paige, 464 F. Supp. 99, 100 (E.D. Pa.

6

1978) (eight year old conviction was deemed to have diminished probative value)).  In light of all of this, we do not conclude that any of the convictions are so remote in time as to be irrelevant.  Consequently, we find that this Greenidge factor weighs in favor of admission.

The final two Greenidge factors address the importance of the witness's testimony, as well the importance of the witness's credibility.  See Greenidge, 495 F.3d at 97–98; see also Sharif, 740 F.3d at 273 ("The final two Greenidge factors, the importance of the witness's testimony and the importance of credibility to the claim at hand, overlap.")  The issue in this case is the reasonableness of the force used by Vazquez and Love.  As the sole independent witness, there is no doubt that Russell's testimony is significant to the outcome of the trial.  By choosing to testify, Russell places his credibility at issue.  See United States v. Beros, 833 F.2d 455, 463–64 (3d Cir. 1987) (stating that all witnesses "subject[ ] [their] credibility to scrutiny" upon taking the stand).

Russell's version of events widely diverges from Defendants' versions in two critical ways.  First, Russell claims that he did not flee the scene until Love arrived and tased Tate, but Defendants assert that he fled the scene before that time.  See supra p. 2.  Second, Russell has testified that Vazquez deployed his taser and Love tased Tate after he was handcuffed, whereas Defendants assert that Vazquez will testify that he did not deploy his taser, and Love has previously testified that he tasered Tate because he tried to attack the police.  Id.  The importance of Russell's testimony in this case is without question.  Likewise, Russell's credibility is crucial because his version of events supports Tate's version, and is contrary to the Defendants' version.  See Sharif, 740 F.3d at 273 ("Sharif's testimony was very important as he was his only witness, and for that very reason, his credibility was also crucial to his claim.").  As a result, both the third

and fourth Greenidge factors strongly favor admission of the convictions.

After balancing the Greenidge factors, we find that the probative value of Russell's four prior convictions outweighs their prejudicial effect. "The primary concern regarding prejudice is that the jury may believe that the defendant has a propensity towards acting in conformity with a prior bad act." Sharif, 740 F.3d at 273-74 (citing Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir.1967) ("[T]here is inevitable pressure on lay jurors to believe that if he did it before he probably did it this time.")). Accordingly, a court must "ask whether the admission of this conviction 'ha[d] the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired.'" Id. (quoting Tabron v. Grace, 898 F. Supp. 293, 296 (M.D. Pa. 1995)). In this case, the admission of Russell's four prior convictions does not have the potential to so prejudice the jury. Consequently, the balance of the probative and prejudicial values of the prior convictions clearly favors admitting the convictions pursuant to Rule 403. Defendants' Motion in Limine shall be granted. We note, however, that the Court will give the jury a limiting instruction to the effect that it may only consider Russell's prior convictions for impeachment purposes.[3]

### III.   CONCLUSION

The Defendants' Motion in Limine is granted. Defendants are permitted to impeach Russell's credibility, should he choose to testify, through four of his prior convictions.

An appropriate Order follows.

---

[3] Tate argues that Russell's past arrests and other bad acts are excluded under Federal Rule of Evidence 404(b). (Pl.'s Response Defs.' Mot. in Limine at 4-5.) Rule 404(b) prohibits the use of evidence of crimes, wrongs or other acts to prove a person's character. See Fed. R. Evid. 404(b). Defendants' Motion in Limine pursuant to Federal Rule of Evidence 609(a) solely pertains to Russell's four prior convictions. Russell's past arrests and other bad acts are not at issue.